# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

RANDEL L. KIBLER,

                            *Plaintiff,*

    v.

XPO LOGISTICS, INC.,

                          *Defendant.*

Index No._____

**COMPLAINT**

---

Plaintiff, Randel L. Kibler, by and through his attorney, Lindy Korn, Esq., hereby complains of the Defendants, upon information and belief, as follows.

## NATURE OF THE CLAIMS

Plaintiff seeks the appropriate remedies and damages for discriminatory treatment based on Disability, Age, Hostile Work Environment, and Retaliation in violation of New York Executive Law §296 and Title VII of the Civil Rights Act of 1964.

## JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to New York Civil Practice Law and New York Executive Law, Article 15, §296.

2. Venue is proper in this Court based upon Plaintiff's residency within the County of Niagara, Defendant is located in the County of Erie, and a substantial part of the acts or omissions giving rise to the Plaintiff's claims occurred in the County of Erie.

1

## PARTIES

3. At all times referenced in the complaint, Plaintiff Randel L. Kibler ("Plaintiff") is a resident of the State of New York, County of Niagara.

4. At all times referenced in the complaint, Defendant XPO Logistics, Inc. ("Defendant") was located at 877 Niagara Street, Tonawanda, New York 14150.

## MATERIAL FACTS

1. In 2011, I injured my neck while at work pulling a pallet jack, with approximately one ton of weight on it up an incline into a union dock.

2. Upon Defendant's acquisition of Con-way, new supervisors and dock workers were hired to replace the former Con-way employees that were terminated.

3. Due to this turnover Supervisors and the new policies and procedures caused delays in deliveries which in turn caused complaints from Defendant's clients.

4. Defendants blamed the late deliveries and client complaints on me.

5. Defendants also implemented new practices that caused delays due to the scheduling of deliveries. The practices by new supervisors created routes for me that defied logic and was counter-productive for me to make deliveries on time, causing more client complaints.

6. Defendants also implemented new devices to track deliveries. The devices are handheld computers which are inherently difficult the older employees to learn and utilize.

7. The devices were to allow Defendants to get an update of my deliveries but only after I inputted the delivery into the device upon completion of my delivery. This cos me valuable time while on the road making multiple deliveries.

8. Due to the delays Defendant's newly implemented practices caused for me created performance issues as they blamed me for the client complaints of late deliveries.

2

9. Furthermore, Defendant wanted me to also notify dispatch of delays during my deliveries, which of course caused more delays.

10. Defendants considered any stop that lasts longer than fifteen (15) minutes a delay. However, what is not considered by Defendants is that I am a driver *and* sales representative. When I am at a stop and the client has an issue or questions, I am there to help them. It is not controlled by my work ethic or speed of delivering that causes delays within my route. It is typically due to me doing, what I believe to be, a satisfactory job.

11. I felt targeted due to my age and disability. A job I did for decades successfully without issue, I am now being told I had great deficiencies and that my overall performance was well below Defendant's expectations. Though I believed the deficiencies were caused by brand new warehouse workers who did not have experience and brand-new supervisors who were implementing practices that were counter-productive to Defendant's overall goals, in making timely deliveries to clients.

12. During this time, I was noticing safety issues by the new dock workers. As an employee of more than twenty (20) years, who had been injured on the job, when I see someone doing anything that is unsafe to themselves or the people around them, I speak up.

13. In July 2017, I witnessed an employee, Bill Palmer, using a short lift on product too large for the particular lift. I stepped in and exclaimed "Whoa, whoa" to stop him. He told me he was doing what he was told to do. I asked him if his supervisor told him to use the short lift on the long freight. He responded, "This is XPO, not Con-way. You don't run the show." Our exchange was loud, deservingly so, as it is loud in the dock area and the actions, I witnessed needed to be stopped immediately for safety reasons.

3

14. Shortly thereafter, I heard on the loudspeaker for Mr. Palmer to report to the supervisor, Randy Simon's office. At that point I knew what was happening, that Randy was getting a statement from Bill of the exchange we just had. Since I realized what was going on, I decided to take a picture of the freight and lift in question.

15. I then got called down to the office and was reprimanded for taking pictures of the freight. I told Mr. Simon I was collecting information to be pro-active to defend myself.

16. By 2018 it was clear to me that I was being targeted by Defendants as I continuously get verbally reprimanded by my supervisor to do the job quicker. This caused less interaction with customers, causing customer complaints, and caused me to make catch-22 decisions of whether I should stay on schedule and not follow Defendant's practices, mainly the handheld device, or if I should comply with their practices and cause further delay to my route, again causing customer complaints. Again, timely deliveries were never an issue for me until Defendant's new implemented practices.

17. At one point, I asked my supervisor to punch me in and out of lunch, therefore I would be able to work through my lunch to ensure timely deliveries. If I were to punch out for lunch in my truck, my truck turns off and not be able to start until I punched back in thirty (30) minutes later.

18. However, my supervisor one day punched me in and out only twenty-eight (28) minutes for lunch. If I had not noticed the mistake in time, I again would have been reprimanded.

19. In May of 2018, I was disciplined with a "letter of communication" due to what Defendant's described as "disruptive interaction" in the dock area. This again was an exchange I had with a co-worker regarding the loading of freight. All communication in the dock area is naturally loud, due to necessity. I was being targeted for interactions.

4

20. Furthermore, this particular interaction that I had with my co-worker, Wayne C., was due to him confronting me about how I was loading freight. I was following the instructions provided in the Defendant's handheld system and Wayne took objection to this. Then I was forced to sign the letter of communication stating, "if you have a complaint about another employee's performance or actions, you will address it with a supervisor or manager."

21. However, as I stated to Defendant, it was Wayne who had an issue with my actions that he addressed with me and not a supervisor or manager. Upon information and belief, I was the only one subjected to a Letter of Communication.

22. In December of 2018, during a work event which I was being awarded for my 25 years of employment, I was called down to a meeting during the event and was issued another Letter of Instruction regarding my overall performance.

23. The Letter of Instruction was regarding delays of two deliveries and three pick-ups I was assigned on December 7, 2018. The delays caused by Defendant's new policies and practices which I had made complaints prior about

24. It is understood, when new management is put in place it is their decision to implement what they believe to be a better procedure, however, if their new policies and procedures inherently cause members of a particular protected class (age) disadvantages, or in my case, impossible tasks to complete it is discriminatory.

25. On December 7, 2018, I was presented with an over burdensome route due to the weather conditions, amount of deliveries and pick-ups I was assigned, and logistics of the route. As an older employee I was not capable of moving quickly through the snow and ice, while keeping up on contacting dispatch every time I was delayed, which on this day was constant due to the weather, and while keeping up on each customer's concerns and reports during the deliveries.

5

26. I refused to sign the Letter of Communication and instead wrote out a complaint of stating the discrimination I faced as an older employee, and the harassment I was facing due to it.

27. I never received an acknowledgment, nor did any investigation take place due to my complaint.

28. Shortly thereafter, in January 2019, I made a request for a reasonable accommodation and escalated my complaint to Human Resources.

29. I made a complaint to Human Resources regarding not receiving a bid for runs, stating due to my seniority and past physical injuries I believed I would be allowed to work another consignee's freight that would not cause the wear and tear on my body.

30. I followed up with an email regarding my complaint, which was sent to Tim Atzinger, Director of HR, and Marianna [last name unknown], Reginal HR. I did not receive a response.

31. During this time, along with my complaint, was a request for accommodation per the ADA. Defendant did not engage in the interactive process nor request any medical records to inquire what reasonable accommodation would be necessary. Defendant simply ignored my request.

### FIRST CAUSE OF ACTION
**Age Discrimination and Hostile Work Environment Based Upon the Same in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1) and Title VII of the Civil Rights Act of 1964.**

5. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

6. NYSHRL § 296(1) prohibits discrimination based upon one's age.

7. Plaintiff was subjected to disparate treatment based on his age. Defendant subjected Plaintiff with disciplinary action when younger employees engaging in the same conduct were not. Plaintiff was given worse job duties than younger peers with seniority were. Defendant's implemented new policies to intentional, and with malice target older employees. Plaintiff suffered poor performance reviews as a result.

6

8. Based on the foregoing allegations, Plaintiff states a cause of action for age discrimination against Defendant.

## SECOND CAUSE OF ACTION
**Retaliation in Violation of New York State Human Rights Law (Executive Law, Article 15), § 296(1) and Title VII of the Civil Rights Act of 1964.**

9. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

10. To establish a prima facie case of retaliation, a plaintiff must show: "1) [he] has engaged in protected activity, (2) [his] employer was aware that [he] participated in such activity, (3) [he] suffered an adverse employment action based upon [his] activity, and (4) there is a causal connection between the protected activity and the adverse action." *Matter of Abram v. N.Y. State Div. of Human Rights*, 71 AD3d 1471, 1474 (4th Dept 2010).

11. Plaintiff engaged in protected activity when he made complaints of disparate treatment based on discriminatory animus from Defendant's based on Plaintiff's protected class.

12. Based on the foregoing allegations, Plaintiff states a cause of action for retaliation against Defendant.

## INJURY AND DAMAGES

13. As a result of the acts and conduct complained herein, Plaintiff suffered tremendous emotional pain, suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has experienced emotional and physical distress, as described above.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiff respectfully requests a judgment against the Defendants:

7

a.  Awarding Plaintiff compensatory damages for mental, emotional, and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

b.  Awarding Plaintiff economic damages of lost wages and medical expenses;

c.  Awarding Plaintiff punitive damages;

d.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of this action;

e.  Awarding Plaintiff such other and further relief that this Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount to be determined at trial plus interest, punitive damages, attorney's fees, costs, and disbursement of action, and for other such relief as this Court deems just and proper.

Dated: Buffalo, New York
       March 15, 2020

By: _____
    Lindy Korn, Esq.
    Richard Perry, Esq.
    *Attorneys for Plaintiff*
    Law Office of Lindy Korn, PLLC
    535 Washington Street, Ninth Floor
    Buffalo, New York 14203
    716-856-5676 x 5
    lkorn@lkorn-law.com
    rperry@lkorn-law.com

8

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

RANDEL L. KIBLER,

Index No._____

                          *Plaintiff,*

        v.                                        **VERIFICATION**

XPO LOGISTICS, INC.,

                          *Defendant.*

_____

        Randel L. Kibler, under penalty of perjury, deposes and says:

        I have read the attached *Complaint* captioned in this matter and find it to be true to my knowledge, except as to matters alleged upon information and belief, which I believe to be true.

                                        _____
                                        RANDEL L. KIBLER

Sworn before me on this 15 day of march 2021

_____
Notary Public

LINDY SUE KORN
Notary Public, State of New York
Registration #02KO4700780
Qualified In Erie County
Commission Expires June 30, 2023

9